George **KILLINGSWORTH**, Plaintiff,

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**, Defendant.

No. C–84–6395–WWS.

United States District Court, N.D. California.

Jan. 23, 1985.

---

George Killingsworth, in pro per.

Lynn K. Richardson, Asst. U.S. Atty., San Francisco, Cal., for defendant.

ORDER

WILLIAM W. SCHWARZER, District Judge.

Plaintiff George Killingsworth brings this action against defendant Department of Health and Human Services alleging race and age discrimination in a job selection procedure in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. §§ 2000e *et seq.* and section 15 of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621 *et seq.* Defendant moves to dismiss, or in the alternative, for summary judgment.

FACTS

Plaintiff is a white male, forty-five years old. He began working with defendant in January, 1977, as a GS–12 Refugee Resettlement Program Specialist in the Region IX Office of Refugee Resettlement ("ORR"). Plaintiff's first position was a temporary (one-year) appointment in the competitive service. In January, 1978, his position was converted to a GS–12 Refugee Specialist, an excepted service Schedule A position, with a term not to exceed September 30, 1981. He remained in this position, title of which subsequently changed to Program Specialist, throughout his tenure with defendant.

On August 28, 1980, the defendant's Regional Personnel Office ("RPO") announced a vacancy for a position as a GS–13 Refugee Resettlement Specialist in the Region IX ORR. The vacancy announcement, # OS–80–247, specified that applications would be accepted from defendant's permanent employees in the competitive service. On September 12, 1980, plaintiff submitted an application for this position. In a cover letter accompanying his application, he stated "I am aware that because I am a Schedule A employee, I do not technically meet the eligibility criteria stated in the announcement." He also noted in the cover letter that the Region IX Principal Regional Official ("PRO") had informed plaintiff earlier that he hoped to devise a way of allowing experienced Schedule A Program Specialists to apply for the new position. However, in order for excepted

service employees to be considered for positions in competitive service, they must first compete through the Office of Personnel Management's open examination procedure. The PRO realized, after his initial exchange with plaintiff, that the OPM procedure would take two months to complete. Because of pressing management needs to fill the position, the PRO decided against using the OPM certification procedure for excepted service employees and to limit selection to those already in the competitive service. In his cover letter, plaintiff also noted that he had been in the Senior Level GS–13 register for the past four years, but that his rating expired on August 21, 1980, just eight days prior to the publication of the vacancy announcement # OS–80–247.

The vacancy announcement closed on September 12, 1980. By letter dated September 17, 1980, RPO informed plaintiff that he was not an eligible candidate for position # OS–80–247 because he did not have the requisite competitive civil service status. On September 26, 1980, the position was filled by an Asian-American female.

Plaintiff contacted an Equal Employment Opportunity ("EEO") counselor concerning his non-selection for the position on January 15, 1981. At the same time, he also sought counseling concerning his non-selection for three other vacancies within ORR, which had been filled in December 1980, and his impending separation by reduction-in-force ("RIF"). As to all these matters, he alleged that defendant had discriminated against him on the basis of race and age. The plaintiff's complaints were not resolved at the informal counseling stage, and on February 27, 1981, he filed a formal EEO complaint with defendant, alleging discrimination in the four non-selections and the RIF action, which had become effective on February 23, 1981. He alleged that the vacancy announcements were constructed "in such a fashion as to exclude non-asians from eligibility to apply." EEO complaint, p. 2. He also alleged that the result of his non-selection for vacancies "skewed the age distribution of the ORR

staff to a point where most were considerably under 40 years of age." EEO complaint, p. 3. Because additional information relevant to his formal complaint had to be obtained, defendant did not consider the EEO complaint filed until March 24, 1981.

In the meantime, on March 9, 1981, plaintiff filed an appeal with the Merit Systems Protection Board ("MSPB") concerning his separation by RIF, again alleging that defendant had discriminated against him. In light of this MSPB appeal, which involved issues similar to the plaintiff's EEO complaint, defendant rejected the plaintiff's EEO complaint as moot on May 11, 1981. On May 28, 1981, an MSPB hearing was held on the RIF issue. In his subsequent decision of June 29, 1981, the MSPB Presiding Official affirmed the RIF action, finding that defendant had properly applied RIF procedures in separating the plaintiff and that no discrimination had occurred. The non-selection issues were explicitly excluded from coverage in that decision. By decision of May 3, 1982, the full MSPB denied plaintiff's petition for review of the Presiding Official's decision.

Plaintiff then sought review by the Equal Employment Opportunity Commission ("EEOC") of the MSPB's decision and defendant's rejection of his EEO complaint concerning the four non-selections. In its decision dated April 13, 1983, the EEOC affirmed the MSPB's decision finding no discrimination in the RIF action, but remanded the discrimination allegations concerning the four non-selection issues to defendant. On August 5, 1983, defendant accepted two of the non-selection issues for EEO complaint processing, but rejected the other two as untimely, including the non-selection for position # OS–80–247. Plaintiff appealed to the EEOC defendant's decision rejecting these two non-selection issues. By decision dated September 4, 1984, the EEOC affirmed defendant's rejection of plaintiff's complaint as to position # OS–80–247, and remanded the other non-selection issue. Plaintiff was issued a right-to-sue letter and now brings his claims regarding position # OS–80–247 before this

Court. Defendant moves to dismiss or, in the alternative, for summary judgment. Because both parties rely on material submitted in addition to their pleadings, this motion is treated as one for summary judgment pursuant to Fed.R.Civ.P. 56.

DISCUSSION

Defendant moves for summary judgment on three grounds. First, defendant argues that because plaintiff did not consult an EEO counselor within the prescribed period, his complaint was properly rejected for processing by defendant as untimely. Because there are no equitable reasons for tolling the timeliness requirements, plaintiff's claim is barred as untimely. Second, defendant argues that plaintiff cannot establish a *prima facie* case of discrimination because plaintiff was not eligible for the position for which he applied. Vacancy announcement # OS–80–247 was a merit promotion position, requiring competitive status. As a schedule A employee in the excepted service, plaintiff had no competitive service, and was therefore ineligible to apply. Third, defendant argues that plaintiff wilfully deceived this Court by falsely claiming that he is sufficiently indigent to proceed *in forma pauperis* in this matter. Defendant requests that as a sanction for this conduct, plaintiff's complaint be dismissed with prejudice.[1]

### A. Timeliness of the Complaint

Complaints are initiated by consultation with an EEO counselor designated by the agency. 29 C.F.R. § 1613.213(a). Where, as here, the complainant is alleging discrimination in the agency's failure to select him for a particular position, the initial consultation with an EEO counselor must take place within thirty days of the selection action by the agency. 29 C.F.R. § 1613.214(a)(1)(i). If a complainant fails to comply with this provision, the agency is not required to accept the complaint for processing. 29 C.F.R. § 1613.214(a)(1).

Plaintiff alleges discrimination in defendant's failure to select him for the GS–13 Refugee Resettlement Program Specialist position advertised in vacancy announcement # OS–80–247. Plaintiff was notified on September 17, 1980, that he was not being considered for that position. The selection for the position occurred on September 26, 1980. Plaintiff did not consult with an EEO counselor, however, until January 15, 1981, more than three months after the position was filled. Defendant therefore rejected plaintiff's complaint as untimely. The EEOC upheld defendant's action in its September 4, 1984, decision.

The Supreme Court held in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982), that, with regard to non-federal employees, timely filing of a discrimination charge is not a jurisdictional prerequisite to suit in federal court. Rather, the Court likened the timely filing requirement to a statute of limitations, subject to waiver, estoppel and equitable tolling. *Id.* *Zipes* applies equally to EEO complaints presented to federal agencies by employees. *Ross v. United States Postal Service*, 696 F.2d 720, 722 (9th Cir.1983).

Plaintiff argues that the 30-day time period should be equitably tolled. While he concedes that defendant's "action to limit the scope of competition" occurred with the publication of the vacancy announcement, plaintiff argues that he did not become aware of defendant's discriminatory purpose until January 5, 1981, when he discovered an allegedly damaging memorandum in his 7B personnel file. He argues that this memorandum, written on November 15, 1980, alerted him to the "continuing attempt to limit the [employment] prospects of the plaintiff (Caucasian male)." Opp. at 8. Plaintiff relies for support on *Poindexter v. Federal Bureau of Investigations*, 35 FEP 131 (D.D.C. Nov. 24, 1982). In *Poindexter*, plaintiff was placed

---

1. Defendant's argument regarding plaintiff's *in forma pauperis* status was raised in its Supplemental Motion to Dismiss, filed January 11, 1985. Defendant applied ex parte for an order shortening time for a hearing on the supplemental motion so that this Court could dispose of both motions on January 18, 1985. The order was granted.

on leave without pay by his employer agency on three occasions. On February 6, 1981, he filed an EEO complaint in which he alleged that all three instances of leave without pay were reprisals for previously filing an employment discrimination complaint. Defendant contended that the EEO complaint was not timely filed with respect to the first two actions. Plaintiff maintained, however, that he did not realize that the first two actions were reprisals until he was placed on leave without pay for the third time. The court concluded that the failure to discover that a personnel action was designed to be a reprisal is an adequate ground to toll the time limits for filing an EEO complaint with the agency. Similarly, plaintiff here argues that he did not realize the discriminatory purpose in the construction of the vacancy announcement until he discovered the memorandum in his file.

■ Belated discovery of the memorandum is insufficient to invoke the *Zipes* doctrine. Plaintiff demonstrates no correlation between the memorandum and a discriminatory reason for his non-selection. The memorandum placed in plaintiff's personnel file was not written until November 13, 1980, by an employee who was not hired until September 26, 1980. Plaintiff's application for position # OS–80–247 was rejected on September 17, 1980. This memorandum could not have affected the selection which occurred in September. Moreover, plaintiff's 7B personnel file was not consulted in determining his eligibility to compete for the position. Defendant determined from the face of plaintiff's application that he was a Schedule A term employee in the excepted service, and thus ineligible for consideration for the position. See Bennett Decl. at ¶ 6.

### B. *Establishment of Prima Facie Case*

Discrimination cases under Title VII involve two common methods of discriminatory behavior by employers. In disparate treatment cases, the employer "treats people less favorably than others because of their race, color, religion, sex, or national origin." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). In disparate impact cases, the employer uses "employment practices that are facially neutral ... but in fact fall more harshly on one group than another ...." *Id.* Plaintiff's claim falls in the first category.

■ In *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), the Supreme Court enunciated the elements of a *prima facie* case of discrimination. Relying upon the *McDonnell Douglas* elements, the Ninth Circuit has summarized the general *prima facie* case as follows:

Plaintiff must show

(1) that he was within a protected class;

(2) that he applied for and was qualified for a job for which applications were sought;

(3) that he was rejected;

(4) that after his rejection, the employer continued to seek applicants.

*Fernandez v. Wynn Oil Co.*, 653 F.2d 1273, 1275 (9th Cir.1981).

If an applicant is not qualified for the job in question, he has failed to establish a *prima facie* case. *Id.; Morita v. Southern California Permanente Medical Group*, 541 F.2d 217, 219 (9th Cir.1976), *cert. denied*, 429 U.S. 1050, 97 S.Ct. 761, 50 L.Ed.2d 765 (1977).

■ Before a determination can be made as to whether an applicant is "qualified" for a position, the applicant must be eligible to compete for that position. Eligibility to compete for a merit promotion in the competitive service is limited to those with competitive status. 5 C.F.R. § 335.102. The excepted service is separate and distinct from the competitive service, and employees in the excepted service do not acquire competitive status by virtue of their

appointments. 5 U.S.C. § 2102(a)(1)(A); 5 C.F.R. §§ 212.101, 302.102(b). Schedule A appointments are within the excepted service. 5 U.S.C. § 2103; 5 C.F.R. §§ 213.-101(a), 213.3101(a). Therefore, Schedule A term employees do not have competitive status which would entitle them to compete for merit promotions in the competitive service.

■ The GS–13 Refugee Resettlement Program Specialist advertised in vacancy announcement # OS–80–247 was a merit promotion position, requiring competitive status. As a Schedule A term employee in the excepted service, plaintiff had no competitive status. He therefore was ineligible to compete for that position. Plaintiff himself acknowledged in the cover letter accompanying his application that he did "not technically meet the eligibility criteria." Since plaintiff was found ineligible, he could not be considered "qualified" for the position. Thus, plaintiff fails to establish an essential element of his *prima facie* case.

■ Plaintiff argues that the vacancy announcement was "unnecessarily narrowed to disadvantage (or eliminate from consideration) the prospects for more experienced non-Asian candidates for those positions." Opp. at 10. However, the fact that employees in the excepted service could not compete for this vacancy does not demonstrate that Caucasian applicants were excluded from competition.[2]

Because plaintiff's claim is barred as untimely, and because he fails to establish a prima facie case of discrimination, it is not necessary to address the remaining ground of defendant's motion. For the reasons stated above, defendant's motion for summary judgment is granted.

IT IS SO ORDERED.

---

**2.** Plaintiff attaches as an exhibit selected portions of Federal Investigation Report # DPI 81–33 which state that Sharon Fuji, Director of Region IX ORR, was given an Expert appointment by RPO in violation of civil service regulations. The report, however, does not address any irregularities in the selection procedure for vacancy # OS–80–247. Nor do the selected pages suggest any discrimination against Caucasion or older job applicants.