**Louis JOHNSON, Appellant,**

v.

**WOLFF'S CLOTHIERS, INC., Appellee.**

**No. 81–1060.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 16, 1981.

Decided Nov. 11, 1981.

---

1. The Honorable H. Kenneth Wangelin, Chief Judge, United States District Court for the Eastern District of Missouri.

Doris Gregory Black, St. Louis, Mo., for appellant.

Kortenhof & Ely, Amy S. Rubin, Joseph M. Kortenhof, St. Louis, Mo., for appellee.

Before STEPHENSON, Circuit Judge, GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

STEPHENSON, Circuit Judge.

Louis Johnson appeals from the district court's[1] denial of recovery on his claims for discrimination filed under Title VII and 42 U.S.C. §§ 1981, 2000e et seq. *Johnson v. Wolff's Clothiers, Inc.*, 504 F.Supp. 490 (E.D.Mo.1980). Johnson contends that the district court erred in finding a lack of discrimination and in denying him a jury trial on his legal claims under section 1981. We reverse in part.

*Facts*

On July 12, 1978, Johnson, a black male, applied for a position as assistant manager with Wolff's Clothiers in the St. Louis, Missouri area. Johnson had been employed by Wolff's for five to six years (1971–1976) in Wolff's downtown and Northwest Plaza stores. After Johnson left Wolff's, he opened his own store which closed after approximately two years of operation. Johnson applied for the position with Wolff's in response to an advertisement that appeared in the St. Louis Post Dispatch newspaper. Mel Bosdeck, store manager of Wolff's West County Store, interviewed Johnson several days after he applied.

During the course of the interview, Bosdeck told Johnson that the salary would be $106.00 per week as a draw against an eight and one-half percent commission on men's furnishings, a seven percent commission on men's clothing, and a potential annual bonus based on the store's success. Johnson expressed surprise and disbelief at the salary. He told Bosdeck that it was less than he had earned as a salesman for the company two years earlier.

Bosdeck later testified that Johnson told Bosdeck he could make more on unemployment. Johnson doubted the accuracy of the salary and asked Bosdeck to verify it. Bosdeck indicated the salary was correct and that it was the same as he received. Although Johnson contested it at trial, Bosdeck also testified that Johnson said he did not want the job at that salary. Bosdeck

told Johnson that he had several other candidates to interview and that he would let him know about the company's decision.

Bosdeck discussed Johnson and other applicants with the president of Wolff's. The decision was made to offer the position to a white candidate who accepted it, but resigned before coming to work. Subsequently, the president and manager decided that the position was not necessary and did not fill it.

A week later, when Johnson did not hear from Wolff's, he called the manager and was informed the company had decided not to fill the position. Thereafter Johnson filed a complaint of discrimination with the Equal Employment Opportunity Commission and brought the present action in federal district court.

Johnson brought suit under Title VII, 42 U.S.C. § 2000e et seq. and § 1981 seeking employment, compensatory damages for back pay, punitive damages, a declaratory judgment, an injunction against further violation, and attorney's fees and costs.

Johnson argued before the district court that Wolff's discriminated against him through their refusal to hire him. As evidence of their discriminatory intent, he pointed to the low salary offered him, the absence of any black managerial personnel in Wolff's stores in the St. Louis area, the hiring of a less qualified white applicant, and after the white turned the position down, a decision not to fill the position. As evidence of his qualifications, Johnson pointed to his many years in the clothing business, the many awards he has won for his sales performance while working for Wolff's, his recognition as a minority businessman and his two-year college degree. He argued the white applicant had had little experience in the clothing business and that his supervisory experience was limited to the sale of automobile equipment.

Wolff's answered that the white applicant was better qualified than Johnson.

---

1. The Hon. Clyde S. Cahill, United States District Judge for the Eastern District of Missouri.

Opinion published at 504 F.Supp. 490.

Wolff's pointed out that the white candidate had a four-year college degree and Johnson had a two-year degree. Wolff's argued that the applicant had two previous jobs where he served as a manager whereas Johnson's only managerial experience was in operating his own store, which failed. Wolff's emphasized that the white applicant was offered the same salary as Johnson, that twenty-five percent of the employees in Wolff's downtown store were from minority groups, and that there were fourteen black employees working in Wolff's three St. Louis area stores. Also, Wolff's responded to Johnson's allegations that Wolff's had no black managers or assistant managers in the St. Louis area, that none of Wolff's stores had assistant managers. Furthermore, they justified their refusal to hire Johnson on the grounds that they felt his displeasure with the salary would not make him a good supervisor.

*Title VII*

■ In considering Johnson's Title VII claims, the district court misstated the test for establishing a prima facie case of racial discrimination set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), as follows:

1) that plaintiff belongs to a racial minority,
2) that plaintiff applied for and was qualified for a job for which the employer was seeking applicants,
3) that he was rejected, even though qualified,
4) the position was offered to a lesser qualified white employee, and finally,
5) the reason plaintiff was not offered the job was because of racial discrimination.

*Johnson v. Wolff's Clothiers, Inc., supra*, 504 F.Supp. at 493.[2]

The district court found that the first four elements of the *McDonnell Douglas* test were satisfied, but that the fifth element was not met. However, in reality, the listed fifth element was superfluous to the correct test. In fact it is merely a restatement of the ultimate result of the test if the first four elements are established.

■ As we have held, a "semantical error" will not require a different result in a racial discrimination suit where a claim of racial discrimination is "amply supported by sufficient and substantial evidence." *Williams v. Trans World Airlines, Inc.*, 660 F.2d 1267, 1271 (8th Cir. 1981). As a result, we will look beyond the misstatement of the *McDonnell Douglas* test to ascertain the district court's findings and apply the test correctly. We hold that because the district court found that the elements of the *McDonnell Douglas* test were satisfied and the record supports that finding, a prima facie case of discrimination was established and the burden shifted to the defendant to articulate a legitimate, nondiscriminatory reason for the refusal to hire Johnson.

■ Clearly, the district court found a legitimate articulated reason for Wolff's refusal to hire Johnson. The court found that Johnson's discontent over the salary offer was an especially important factor in light of the sensitive nature of a managerial position. Such dissatisfaction justified the company's decision not to hire him. *Johnson v. Wolff's Clothiers, Inc., supra*, 504 F.Supp. at 493.[3]

■ Of course, once the employer has articulated a legitimate, nondiscriminatory reason for the employee's rejection, the burden shifts back to Johnson to show that the reason was pretextual. *Texas Department*

---

**2.** The correct standard requires of the claimant: (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *See Vaughn v. Westinghouse Electric Corp.*, 620 F.2d 655, 656–58 (8th Cir. 1980).

**3.** The district court observed that the salary offered Johnson was apparently the same as that given other managers.

*of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). We are satisfied that the district court's discussion of the evidence, including the lack of statistical support for the contention that Wolff's had no blacks in managerial capacities, demonstrates its finding that the reason was not pretextual. The court was troubled by Johnson's failure to discuss the demographic characteristics of the community and an industry-wide examination of the employment of blacks in the industry. Such a finding was not clearly erroneous.

### Section 1981

Johnson argues that it was error for the district court to deny recovery under 42 U.S.C. § 1981. We have interpreted section 1981 as providing "equal rights to all persons regardless of race. * * * [Section] 1981 and the Fourteenth Amendment proscribe any discrimination in employment based on race, whether the discrimination be against Whites or Blacks." *Carter v. Gallagher*, 452 F.2d 315, 325 (8th Cir. 1971) (en banc), *cert. denied*, 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972).

Johnson claims the district court erred in concluding Wolff's actions did not establish discriminatory intent. We disagree. In light of Wolff's concern over Johnson's displeasure with the salary, we find no error in the district court's conclusion that "defendant's actions, however unprofessional, were not based upon discriminatory criteria, illegal under Title VII a fortiori, plaintiff has not shown an intentional, deliberate, or malicious violation of 42 U.S.C. § 1981 * * *." *Johnson v. Wolff's Clothiers, Inc., supra*, 504 F.Supp. at 494 (citations omitted).

4. In our view, the remedy of backpay in § 1981 cases is more appropriately characterized as a compensatory, legal damage. A number of district courts already have adopted this view. We conclude that back pay or lost wage determinations are inherently in the nature of legal damages. The calculations necessary to determine the hours of lost work stemming from a § 1981 violation are

### Jury Trial

Johnson argues that the district court erred in denying a jury trial on his legal claims. We have recognized the right to a jury trial under section 1981 when the claimant seeks compensatory damages. *Bibbs v. Jim Lynch Cadillac, Inc.*, 653 F.2d 316, 318–19 (8th Cir. 1981); *Setser v. Novack Investment Co.*, 638 F.2d 1137, 1142 (8th Cir.), *other portions of opinion amended en banc*, 657 F.2d 962 (8th Cir. 1981); *Sisco v. J. S. Alberici Construction Co.*, 655 F.2d 146, 149–50 (8th Cir. 1981).

We held in *Setser* I that there was a right to a jury trial under section 1981 in a suit seeking back pay as relief. Furthermore, we concluded back pay was a form of legal relief and was, therefore, a proper subject for a jury determination.[4] When Title VII and section 1981 claims are presented together, a jury trial is available on the legal claims stated under section 1981. *Bibbs v. Jim Lynch Cadillac, Inc., supra*, 653 F.2d at 318–19; *Sisco v. J. S. Alberici Construction Co., supra*, 655 F.2d at 150–51.

It appears, from our examination of the record, that Johnson has failed to present sufficient evidence to warrant submission of his legal claims to a jury. This issue should first be considered by the district court. If the district court so holds, the failure to grant a jury trial would be harmless error. If the court finds there was sufficient evidence to support a verdict for either compensatory (back pay) or punitive damages, then Johnson should be granted a jury trial. *See Bibbs v. Jim Lynch Cadillac, Inc., supra*, 653 F.2d at 319.

Reversed in part and remanded for further proceedings consistent herewith.

straightforward damage computations certainly within the practical capabilities of juries. In sum, we hold that the district court erred in denying appellant's demand for jury trial on all of his legal claims including his claim for back pay.

*Setser v. Novack Inv. Co.*, 638 F.2d 1137, 1142 (8th Cir. 1981) (footnotes and citations omitted).